IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CR-152-D

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| QUINCY ANDRE JONES | ) | |
| | ) | |
| Defendant. | ) | |

On July 7, 2020, Quincy Andre Jones ("Jones" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 117]. On July 27, 2020, the court appointed counsel [D.E. 118] and on July 31, 2020, counsel entered a notice of appearance on behalf of Jones [D.E. 119]. On August 4, 2020, Jones, pro se, submitted documents in support of his motion for compassionate release [D.E. 120]. On April 5, 2021, Jones moved for the court to remove his counsel of record and appoint new counsel [D.E. 130]. On May 3, 2021, the court dismissed the motion to remove and reappoint counsel as moot [D.E. 131].[1] On May 26, 2021, the government responded in opposition to Jones's motion for compassionate release [D.E. 132]. As explained below, the court denies Jones's motion.

I.

On August 8, 2016, pursuant to a written plea agreement, Jones pleaded guilty to conspiracy to distribute and possess with the intent to distribute a quantity of heroin and possession of a firearm

---

[1] The court recognizes that Jones's compassionate release filings are pro se and construes them generously. Cf. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

in furtherance of a drug trafficking crime. See [D.E. 20].[2] On July 12, 2017, Judge Howard held a sentencing hearing. See [D.E. 81]; [D.E. 86]; Sent. Tr. Day 2 [D.E. 89]. Judge Howard adopted the facts set forth in the Presentence Investigative Report ("PSR") and addressed Jones's objections. See Sent. Tr. Day 2 at 5–45; PSR [D.E. 32]; Fed. R. Crim. P. 32(i)(3)(A)–(B). Judge Howard calculated Jones's offense level to be 29, his criminal history category to be VI, and his advisory guideline range to be 262 to 327 months' imprisonment. See id. at 46. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Howard sentenced Jones to 202 months' imprisonment on count one, and 60 months' consecutive imprisonment on count two, for a total sentence of 262 months' imprisonment. See id. at 5–50.

Jones appealed and argued that his actual innocence claim fell outside the scope of the appeal waiver [D.E. 83]. The United States Court of Appeals for the Fourth Circuit enforced the appellate waiver and granted the government's motion to dismiss the appeal, noting that Jones "waived his claim of actual innocence by moving to withdraw his guilty plea in the district court and subsequently withdrawing that motion and reaffirming his desire to plead guilty and accept responsibility." United States v. Jones, No. 17-4462 (4th Cir. April 5, 2018), ECF No. 95 at 1-2; [D.E. 95]. Jones filed a petition for rehearing en banc, which the Fourth Circuit denied. See [D.E. 98]. Jones filed a petition for a writ of certiorari, which the Supreme Court of the United States denied [D.E. 101].

---

[2] After pleading guilty at his arraignment, Jones moved to withdraw his guilty plea. See [D.E. 37]. The government filed a response consenting to Jones's withdrawal of his guilty plea, noting that it would either go forward with trial on the same counts or seek a superseding indictment. [D.E. 39]. Jones's counsel withdrew with permission of the court, and new counsel was appointed. After consultation with his new counsel, Jones withdrew his motion to withdraw his guilty plea [D.E. 53]. Jones later wrote a pro se letter to the court seeking to withdraw his guilty plea [D.E. 59]. On June 13, 2017, Judge Howard addressed the letter at Jones's sentencing hearing, and Jones asked the court to "disregard the letter." [D.E. 73] 17–20.

2

On July 22, 2019, Jones filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 [D.E. 103]. On July 7, 2020, Jones moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 117]. On July 27, 2020 the court appointed counsel [D.E. 118] and on July 31, 2020, counsel entered a notice of appearance on behalf of Jones in his compassionate release motion [D.E. 119]. On August 4, 2020, Jones, pro se, submitted documents in support of his motion for compassionate release [D.E. 120]. On January 27, 2021, Judge Howard dismissed Jones's section 2255 motion and denied a certificate of appealability [D.E. 125]. Jones appealed [D.E. 127].

On April 5, 2021, Jones moved for the court to remove his counsel of record and appoint new counsel [D.E. 130]. On April 14, 2021 Jones's case was reassigned to the undersigned. On May 3, 2021, the court dismissed as moot the motion to remove counsel and appoint new counsel [D.E. 131].[3] On May 26, 2021, the government responded in opposition to Jones's motion for compassionate release [D.E. 132]. On May 28, 2021, the Fourth Circuit dismissed Jones's appeal from his section 2255 motion. United States v. Jones, No. 21-6245 (4th Cir. May 28, 2021), [D.E. 133].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the

---

[3] Even if not moot, the court declines to appoint another lawyer. The issues are straightforward, and Jones's motion is ripe.

3

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[4] Application note 2 states

---

[4] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

4

that "an extraordinary and compelling reason need not have been unforeseen at the time of

---

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Jones contended he exhausted his administrative remedies before filing the motion. See [D.E. 117] 2. The government agrees, and the court addresses Jones's motion on the merits. See [D.E. 132] 3; cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021).

Jones seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Jones cites the COVID-19 pandemic, the spread of COVID-19 within the Bureau of Prisons ("BOP"), his health conditions, his release plan, and his rehabilitation efforts. See [D.E. 117].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Jones argues that his health conditions, including high blood pressure, multiple myeloma, obesity, hyperlipidemia, disease of the spinal cord, alveolitis of his jaws, type 1 diabetes, mellitus with diabetic nueropathy, otitis media, and monoclonal gammopathy of undetermined significance, warrant compassionate release and notes that several of these conditions put him at heightened risk of serious infection from COVID-19. See [D.E. 117] 4–6. Jones references articles and studies about the severity of COVID-19 and the difficulty of controlling COVID-19 spread in prison. See id. at 4–7. Jones, however, refused the COVID-19 vaccine. See [D.E. 132] 3,18; [D.E. 132-3] 61; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that "have ruled

7

with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances"). Jones has provided no medical or other reason why he cannot receive the COVID-19 vaccine. Moreover, beyond generalized arguments about the spread of COVID-19 within the federal facility at FMC Lexington, Jones does not argue he is unable to manage his health conditions while incarcerated or that the BOP is not treating his conditions. Arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the current conditions at FMC Lexington and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/ coronavirus/overview.jsp#bop_covid-19_response (last visited Nov. 19, 2021).[5] Accordingly, reducing Jones's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Jones's health conditions, his rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, the wide availability of COVID-19 vaccines greatly diminishes the risk to Jones from COVID-19. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Jones's sentence. See

---

[5]As of November 22, 2021, FMC Lexington has reported zero current inmate confirmed test positives, 549 inmate recoveries, and nine inmate deaths. See https://www.bop.gov/coronavirus (last visited Nov. 22, 2021).

8

High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Jones is 42 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute a quantity of heroin and possession of a firearm in furtherance of a drug trafficking crime. See PSR [D.E. 32] ¶¶ 1–2, 4. Jones is a career drug dealer who has repeatedly dealt drugs while on probation for state court convictions. See id. ¶¶ 14–17. Jones played a managing role in his latest drug trafficking operation and possessed a firearm in furtherance of his drug trafficking. See id. ¶¶ 5–10, 56. Jones also obstructed justice, fleeing from law enforcement in a dangerous high speed chase and throwing contraband out of the vehicle. See id. ¶¶ 7–8, 57. Jones also has a horrible criminal history. See id. ¶¶ 14–20. Jones has convictions for larceny (two counts), possession of marijuana, felony possession of cocaine, felony possession of stolen goods or property, felony possession with intent to sell and deliver marijuana, felony maintaining a vehicle, dwelling, or place for controlled substance, felony possession of cocaine, and felony selling cocaine (three counts). See id. Jones also has performed poorly on probation. See id. ¶¶ 16, 17, 22, 23. Jones has a spotty work history. Id. ¶¶ 44–48.

Jones has made some rehabilitative efforts while incarcerated including completing educational and vocational courses and avoiding disciplinary incidents for the period June 2018 to July 2020. See [D.E. 117] 8. The court must balance the positive steps Jones has taken while in custody with the gravity of his criminal conduct, his horrible criminal history, and his poor performance on supervision. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Jones's potential exposure to COVID-19, his medical conditions, his rehabilitation efforts, and his release plan. The court

recognizes that Jones has a supportive family willing to help him upon release. See [D.E. 117] 1; [D.E. 122]; [D.E. 123]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the availability of the vaccine, the section 3553(a) factors, Jones's arguments, and the government's persuasive response, the need to punish Jones for his serious criminal behavior, to incapacitate Jones, to promote respect for the law, to deter others, and to protect society, the court denies Jones's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 117].

SO ORDERED. This 22 day of November, 2021.

JAMES C. DEVER III
United States District Judge

10

Case 5:16-cr-00152-D  Document 136  Filed 11/22/21  Page 10 of 10